JOSEPHINE F. MOEN, Plaintiff, *v.* SAMUEL W. THOMPSON, Defendant.

Supreme Court, Special Term, New York County, April 1, 1946.

648

*George Foster* and *Royal F. Shepard* for defendant.

*J. W. Bernstein* for plaintiff.

SHIENTAG, J. The motion is to dismiss the complaint. According to its allegations, plaintiff obtained a divorce from defendant in the State of California on the ground of cruelty. The decree directed that defendant pay plaintiff alimony in the sum of $100 a month for her support and the support of their three minor children who are in her custody. The parties are now residents of the State of New York. During the months of September, October and November, 1945, defendant paid no alimony. Defendant's annual income, it is alleged, exceeds $10,000. Plaintiff claims she will be unable to feed, clothe and educate the three children unless defendant is required to pay at least $250 a month in alimony instead of the present $100. Plaintiff alleges that she has no adequate remedy at law.

In her prayer for relief plaintiff asks that the amount of accrued and unpaid alimony be adjudged and determined; that defendant be adjudged to pay plaintiff that amount; that he be ordered to pay plaintiff future alimony at the rate of $250 per month; that defendant be required to give security for the payment of future alimony; that his personal property be sequestered and a receiver appointed; that he be enjoined from disposing of any of his property until he pays the arrears and gives security for future payments, and for such other and further relief as may be just.

Contending that the defects are apparent on the face of the complaint, defendant moves to dismiss on the grounds of legal insufficiency, lack of capacity in the plaintiff, and lack of jurisdiction in the court. Plaintiff replies that section 1172 of the Civil Practice Act authorizes her suit. She argues generally that changed circumstances give the court power to award alimony in excess of that awarded by the California decree. She also suggests that, in any event, the complaint states a cause of action at law for the $300 in unpaid alimony, and this regardless of her attempted resort to remedies distinctly equitable in character.

While plaintiff's brief states that she sues pursuant to section 1172, some of the relief which she asks is of the type provided in section 1171. Neither section, however, is available to her. Section 1171, where a divorce is involved, is expressly limited to the situation in which a divorce has been decreed in this State, or has been decreed in another State upon the ground of adultery. Section 1172 does not in terms specify the ground upon which a foreign divorce must have been obtained in order to make the provisions of the section applicable. It has been held, however, that the two sections must be read together, and

that the limitation of foreign decrees to those based upon adultery qualifies the application of section 1172 as well as section 1171 (*Miller* v. *Miller,* 219 App. Div. 61, affd. 246 N. Y. 636). Since the ground of the California divorce in the present case was cruelty, neither section can be invoked.

This reduces plaintiff's contentions (except that concerning her right to a money judgment) to the proposition that a court of equity has jurisdiction, apart from statute, to modify an award of alimony under a foreign decree when changed circumstances indicate such a course to be necessary. It is clear that the court has no power to increase the provision for the spouse (*Little* v. *Little,* 146 Misc. 231, affd. 236 App. Div. 826; cf. *Ramsden* v. *Ramsden,* 91 N. Y. 281). It would not be inconsistent with the traditions of equity to suggest that where children are concerned, the Supreme Court has inherent power to make additional provision for their support when a change of circumstances has made inadequate the original amount awarded under a foreign decree. A court of general equity jurisdiction has an especial interest in the protection of infants. (4 Pomeroy on Equity Jurisprudence [5th ed.], §§ 1303–1305.) Such a court, it is urged, should not be powerless to accomplish adjustments necessary to the proper upbringing and education of the children of a disrupted home.

The authorities, however, are the other way. Though not numerous, they are substantially in agreement (*Matter of Ryder,* 11 Paige Ch. 185; *Matter of Bedrick* v. *Bedrick,* 151 Misc. 4, affd. 241 App. Div. 807; cf. *Schacht* v. *Schacht,* 58 N. Y. S. 2d 54; *Application of MacAlpine,* 50 N. Y. S. 2d 232, affd. *sub nom. People ex rel. MacAlpine* v. *MacAlpine,* 267 App. Div. 952; *People ex rel. Prior* v. *Prior,* 112 Misc. 208; *Alling* v. *Alling,* 52 N. J. Eq. 92; *Huke* v. *Huke,* 44 Mo. App. 308; but cf. *Cowls* v. *Cowls,* 8 Ill. 435). The Domestic Relations Court undoubtedly has power to require payment in excess of the amount which a foreign decree of divorce has fixed for the support of the children (*Scrima* v. *Scrima,* 265 App. Div. 483). But this power is given by express statutory provisions which have no application to the Supreme Court.

The portion of the complaint dealing with unpaid alimony remains to be considered. The foreign decree of divorce is pleaded and alimony in a stated sum is alleged to be due and unpaid. This, standing alone, would amount to a sufficient statement of a cause of action at law. The complaint, however, is framed entirely in equity; it seeks no money judgment but does ask for various forms of equitable relief to which the

plaintiff is not entitled. The question is whether, notwithstanding the fact that a good cause of action in law may be spelled out from a portion of the pleading, the entire complaint must be dismissed.

The New York State Constitution of 1846 abolished the Court of Equity and vested its jurisdiction and powers in the Supreme Court. Section 8 of our Civil Practice Act, which is derived from section 69 of the Code of Procedure (Field Code of 1849), provides as follows: '' There is only one form of civil action. The distinctions between actions at law and suits in equity, and the forms of those actions and suits, have been abolished.''

From an early date it was held that these reforms did not result in a fusion of legal and equitable substantive rules (*Chipman* v. *Montgomery*, 63 N. Y. 221). Nevertheless, they were designed to accomplish a fundamental procedural consolidation of the two systems. The authorities, for the most part, have sought to carry out this design, although judicial resistance to the implications flowing from such a procedural fusion has occasionally manifested itself (Clark on Simplified Pleading, 27 Iowa L. Rev. 272, 276; Walsh on Equity [1930], pp. 109–116).

It is a basic principle of code pleading that a complaint, which on its face states a good cause of action, is not subject to dismissal even though it contains a prayer for relief to which the plaintiff is not entitled. Where the only defect in a complaint is in the prayer for relief, the prayer may be disregarded because it is not an essential part of a cause of action. (*Wainwright & Page* v. *Burr & McAuley*, 272 N. Y. 130; *Port* v. *Holzinger*, 212 App. Div. 124; *Parker* v. *Pullman & Co.*, 36 App. Div. 208; *Wetmore* v. *Porter*, 92 N. Y. 76.)

There is a line of cases holding that a complaint entirely equitable in character, and seeking unattainable equitable relief, may be dismissed on motion before answer although it might be possible to find, in the complaint, facts which would entitle the pleader to some form of relief at law. (*Spring* v. *Fidelity Mutual Life Insurance Co.*, 183 App. Div. 134; *Gosselin Corp.* v. *Mario Tapparelli fu Pietro, Inc.*, 191 App. Div. 580, affd. 229 N. Y. 596.) There is, however, no authority for the proposition that in such a situation the complaint may be dismissed outright and the plaintiff required to institute a new action at law for the relief to which he is entitled. Almost uniformly the cases have held that the pleader who mistakes his remedy will not be put out of court but will be permitted to serve an amended complaint although the amendment would transform

what was originally an action in equity to one at law. Such was the general rule even before the enactment of section 111 of the Civil Practice Act which confers upon the court the broadest power of amendment at any stage of the proceedings. (*Boissevain* v. *Boissevain*, 252 N. Y. 178; *Hermes* v. *Compton*, 260 App. Div. 507, particularly on reargument, 260 App. Div. 1027; *Black* v. *Vanderbilt*, 70 App. Div. 16; *Swart* v. *Boughton*, 35 Hun 281; *Low* v. *Swartwout*, 171 App. Div. 725; *Spring* v. *Fidelity Mutual Life Insurance Co.*, *supra*; *Gosselin Corp.* v. *Mario Tapparelli fu Pietro, Inc.*, *supra*.)

The case of *Terner* v. *Glickstein & Terner, Inc.* (283 N. Y. 299, 301) is not authority to the contrary. In that case the court said: " We 'do not consider whether a good cause of action at law might be spelled out from the allegations of the complaint. The complaint here was framed in equity and equitable relief alone is demanded and if the action does not lie in equity for the reason urged by defendant, the complaint must be dismissed * * *.''

The complaint was dismissed outright; no leave to amend was granted. The failure so to do may be ascribed to the neglect of the plaintiff, in the briefs submitted by him, to ask to be allowed to amend. In any event, the right of the plaintiff to serve an amended complaint was not considered by the court and no reference was made to it. The language in the *Terner* case (*supra*) must be viewed in the light of earlier decisions of the Court of Appeals and of the history of procedural reform in this State. So considered, it clearly does not authorize the conclusion that before answer a plaintiff may not obtain the right to amend his complaint by changing an action for unattainable equitable relief to an appropriate action at law. (Cf. *Standard Film Service Co.* v. *Alexander Film Corp.*, 214 App. Div. 701, where the complaint was dismissed, before answer, without prejudice to an action at law. The very cases cited by the court allowed an amendment and did not require a new action to be instituted.)

With that interpretation placed upon the *Terner* case (*supra*), it fits generally into the pattern of the decisions on this question, a pattern which is clearly defined although not altogether logical in its implications. The cases distinguish between a situation where the motion to dismiss is made before answer and where it is made after answer. After answer, and at any stage of the trial before it is concluded, the complaint will not be dismissed. (*Perrin* v. *Smith*, 135 App. Div. 127; *Marquat* v. *Marquat*, 12 N. Y. 336; *Ashley* v. *Lehmann*, 54 App. Div.

45; *Hirsh* v. *Central Hanover Bank & Trust Co.*, 251 App. Div. 24; *Clark* v. *Levy*, 130 App. Div. 389 [judgment on the pleadings].) The cause will be transferred to the law side of the court there to be dealt with in a manner appropriate to actions at law. (*Kraemer* v. *World Wide Trading Co., Inc.*, 195 App. Div. 305, 306; *Ashley* v. *Lehmann, supra; Emery* v. *Pease*, 20 N. Y. 62; *Everett* v. *De Fontaine*, 78 App. Div. 219.) Presumably, however, at some stage of the proceedings the pleadings may have to be amended where such amendment would have been necessary if the action had originally been brought on the law side of the court. (Cf. *International Photo. Rec. Mach.* v. *Microstat Corp.*, 269 App. Div. 485.)

Logically, perhaps, there should be no distinction on the basis of the time when the motion to dismiss is made, whether before or after answer.* The reasons for such a distinction are largely those of expediency and practicality. The interposition of an answer is of itself an indication that the adversary has had no difficulty in framing his response and, in a general way at least, in defining the issues. Perhaps the best explanation is that it is desirable, even under a liberal system of code pleading such as prevails in this State, that a complaint before answer be put into proper form.

The Appellate Division of this department expressed it thus: " * * * as a matter of common sense, and in the interests of good practice and for the convenience of the court and the parties a complaint should be so framed as to present the real issue which is intended to be litigated so that it may be noticed and brought on for trial in the proper part of the court. The plaintiff is not thrown out of court; he is simply asked to properly frame his complaint. If the defendant does not take timely steps to procure this result, but interposes an answer and waits until the trial to raise the question, an entirely different proposition is presented. Here the point is raised before answer. The rule hereinbefore laid down makes for good pleading and for good practice." (*Low* v. *Swartwout*, 171 App. Div. 725, 731–732, *supra.*)

---

* Section 479 of the Civil Practice Act, formerly section 1207 of the Code of Civil Procedure, may suggest a reason, although it does not seem to be a cogent one. That section provides in substance that where there is no answer, the judgment shall not be more favorable to the plaintiff than he has demanded in his complaint. That section, it has been held, relates not to an action where a demurrer has been interposed but to one where a judgment is to be entered by default, and where the facts in the complaint show that the plaintiff is entitled to any relief, either legal or equitable, it is not dismissible on the ground that the party has not demanded the precise relief to which he appears to be entitled. (*Parker* v. *Pullman & Co.*, 36 App. Div. 208, *supra.*)

It might be urged that it is more logical, even in a situation such as we are considering, to allow the complaint to stand, as to the cause of action at law found therein, and to strike out the remaining portions seeking unattainable equitable relief, as unnecessary and irrelevant under rule 103 of the Rules of Civil Practice (and perhaps require an amended complaint, omitting the objectionable matter, to be served as in that rule provided). Under rule 103, however, the court is powerless to frame a new pleading for the parties. It cannot insert in the pleading any essential allegation that has been omitted. All that it can do is to order objectionable or unnecessary or irrelevant matter stricken from a pleading, where, after the elimination, a good cause of action remains. Rule 103, therefore, could rarely be invoked in dealing with the problem under consideration although it might perhaps be resorted to in the instant case. Generally, the pleading requires more than excision; it has to be reformed or reconstructed. A dismissal without prejudice and with leave to amend meets the needs of the pleader who has mistaken his remedy. Moreover, it gives him the choice of determining whether he will amend, and if so, in what manner. The fact that the Statute of Limitations may run prior to the amendment presents no real difficulty, since the facts already pleaded would constitute the basis of the amended complaint.

The motion to dismiss the complaint is accordingly granted without prejudice and with leave to serve an amended complaint in accordance with the foregoing determination on or before April 15, 1946, upon payment of costs. Settle order.